# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

William T. Mock; Christopher Lewis; Firearms Policy Coalition, Incorporation, *a nonprofit corporation*; Maxim Defense Industries, L.L.C.,

        Plaintiffs-Appellants,

v.

Merrick Garland, *U.S. Attorney General, in his official capacity as Attorney General of the United States*; United States Department of Justice; Bureau of Alcohol, Tobacco, Firearms, and Explosives; and Steven Dettelbach, *in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives*,

        Defendants-Appellees.

No. 23-10319

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CLARIFICATION OF INJUNCTION PENDING APPEAL

Pursuant to Federal Rule of Appellate Procedure 27, the government respectfully submits this response to plaintiffs' motion for clarification of the Court's injunction pending appeal. Having been denied a nationwide injunction, plaintiffs attempt to achieve a similar result under the guise of clarifying this Court's order. As is explained in more detail below, the scope of the Court's injunction is clearly and properly limited to the actual plaintiffs in this case, and nothing about that scope requires clarification. Plaintiffs' request to in fact expand the injunction to cover various non-parties should be rejected and the motion denied.

1. Congress has regulated short-barreled rifles under the National Firearms Act (NFA) as weapons that are particularly dangerous. Under that statute, short-barreled rifles generally must be registered in the National Firearms Registration and Transfer Record, and those who manufacture or transfer them must pay a $200 tax. In the interpretive rule at issue in this case, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) has advised the regulated public that it understands the NFA's definition of "rifle" to cover certain combinations of so-called "stabilizing braces" and heavy pistols and it has informed the public of the criteria that the agency will generally consider in determining whether any particular brace-and-pistol combination constitutes a "rifle" under the statute. *See* Opp. 1.

Plaintiffs in this case are two named individuals; one manufacturer and retailer of braces and braced pistols; and the Firearms Policy Coalition, a nonprofit organization. After the district court denied their motion for a preliminary injunction against the Rule, plaintiffs moved in this Court for a nationwide injunction pending appeal. This Court granted that motion "as to the Plaintiffs in this case." Order at 2.

2. Although the government respectfully disagrees that plaintiffs have established any entitlement to the extraordinary remedy of an injunction pending appeal, the Court's order granting that motion properly and clearly limited the injunction to the actual plaintiffs in this case.

Article III "limits the exercise of the judicial power to 'Cases' and 'Controversies.'" *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). Consistent with that limitation, a court may entertain a suit only by a plaintiff who has suffered a concrete injury and may grant relief only to remedy "the inadequacy that produced [the plaintiff's] injury," *Gill v. Whitford*, 138 S. Ct. 1916, 1929-30 (2018) (quotation omitted). For the same reason, Article III requires that remedies "operate with respect to specific parties," not with respect to a law "in the abstract." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quotation omitted).

Those constitutional limitations are reinforced by principles of equity. A court's authority to award equitable relief is generally confined to the relief "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). And it is a longstanding principle of equity that, at most, injunctive relief may "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs" in a given case. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

This Court limited its injunction "to the Plaintiffs in this case." Order at 2. The scope of that relief is clear: there are four plaintiffs in this case—two named individuals, Maxim Defense, and the Firearms Policy Coalition—and the injunction pending appeal applies to those four plaintiffs and those four plaintiffs alone.

3. Despite this Court clearly limiting the injunction to named plaintiffs,

plaintiffs have now moved for "clarification" as to "the scope of the injunction." Mot. 1. In particular, plaintiffs suggest that the injunction might be read to cover various individuals and businesses who are not plaintiffs, including all potential "customers and intermediaries" of plaintiff Maxim Defense, all "family members who might be present in the house with" the individual plaintiffs, and all of plaintiff Firearms Policy Coalition's "individual and business members." *Id.* at 2. The answer to plaintiffs' request for clarification is clear from the text of the order this Court entered: none of the various suggested beneficiaries are plaintiffs and thus none are protected by the injunction. Clarification is therefore unnecessary, and plaintiffs' motion should be denied.

To the extent that plaintiffs' motion is construed as a request for the Court to expand the injunction, it should likewise be denied. In their motion, plaintiffs develop no argument as to why this Court should extend the injunction pending appeal—itself already an extraordinary remedy—from four named plaintiffs to tens or hundreds of thousands of unnamed and unknowable individuals and businesses. Plaintiffs bear the burden of demonstrating entitlement to equitable relief, *Winter v. NRDC*, 555 U.S. 7, 20 (2008), and they have failed to do so.

Nor did plaintiffs previously request the injunctive relief they now propose: the government's opposition to plaintiffs' stay motion provided notice that the government sought to limit any injunction to named plaintiffs. *See* Opp. 20-22.

Although plaintiffs argued in their request for an injunction that it was necessary to enjoin the Rule "in its entirety," including so that the injunction would encompass some of the third parties they now wish to protect, *see* Inj. Mot. 21-22, plaintiffs did not argue that an injunction limited to those third parties (or any other narrower injunction) would be appropriate were a nationwide injunction rejected. Having now had their request for a broad nationwide injunction (correctly) rejected and the injunction limited to the plaintiffs themselves, plaintiffs cannot attempt a second bite at the apple by seeking an intermediate form of relief extending to some non-parties. Any such request has been forfeited, and the motion should be denied.

    4. Even were the Court to consider plaintiffs' unsupported requests, there would be no basis to extend the injunction.

    a. First, equitable principles preclude granting Maxim's request to extend the benefit of the injunction to its various unnamed "customers and intermediaries."

    Plaintiffs fail to provide a persuasive reason that the balance of the equities and the public interest could support such a broad and unclear injunction—which plaintiffs apparently envision as encompassing not only sales from Maxim to direct purchasers but also sales from those third-party purchasers to downstream purchasers, *see* Mot. 1. As explained, the government, and the public, possess substantial interests in reinforcing the controls that Congress determined are necessary to ameliorate the specific risk that short-barreled rifles pose to the public. *See* Opp. 19-20. And the

injunction plaintiffs now envision would also undermine the regulatory clarity and consistent enforcement of those statutory requirements brought about by the Rule.

Nothing in plaintiffs' motion justifies imperiling the public interest in service of extending the injunction to various unnamed and unknowable third parties. And plaintiffs' request is particularly pernicious given the reality of firearm sales. Plaintiffs did not contend in their motion that the product Maxim sells is not a "rifle" under the NFA. Nor have plaintiffs explained how Maxim's "customers" (by which they appear to mean anyone who buys one of Maxim's products, directly or through a retailer) could be defined in a way that would avoid widespread circumvention of the NFA.

b. Individual plaintiffs' request to extend the benefit of the injunction to their family members who may be present in the same house is similarly unjustified. As an initial matter, plaintiffs did not specifically request or justify any such relief in their motion for an injunction pending appeal, and individual plaintiffs' family members are not themselves plaintiffs in this case. Principles of forfeiture, Article III, and equity thus preclude extending relief to benefit plaintiffs' various family members, as explained.

In any event, the only justification given for such an extension is plaintiffs' speculation (at Mot. 1-2) that their family members might be subject to being charged with constructive possession of an unregistered short-barreled rifle if they are present "in the same house as Individual Plaintiffs." But plaintiffs provide absolutely no

evidence to support that abject speculation. To the contrary, "constructive possession" requires not mere presence in the same space as the firearm but rather "some indication that the [party] controlled the firearm." *United States v. Smith*, 997 F.3d 215, 219 (5th Cir. 2021). Plaintiffs' family members may therefore protect themselves by not exercising control over named plaintiffs' short-barreled rifles.

    c. The Firearms Policy Coalition's request to extend the injunction to its members is particularly unwarranted. At the outset, the Coalition failed to establish that it is a bona fide membership organization that satisfies the requirements of associational standing that would permit it to seek an injunction on behalf of its members. To establish its status as such a bona fide organization, the Coalition would be required to demonstrate relevant "indicia of membership," such as "a clearly articulated and understandable membership structure" with members who "elect[] the governing body." *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997). The Coalition has not even attempted to demonstrate any such relevant indicia; it has not provided any evidence regarding a clear membership structure or hierarchy, nor has it explained how its members direct or control the organization. To the contrary, the Coalition's explanation that it has "hundreds of thousands of members across the country" and that any individual may join through its website, App. 146-47, suggests the lack of any such clear structure or member control. *Cf. VanDerStok v. Garland*, 2022 WL 4809376, at *7 (N.D. Tex. Oct. 1, 2022) (granting a

preliminary injunction to other plaintiffs but declining to extend it to the Coalition's members).

Beyond that, the Coalition's attempt to establish standing to seek relief on behalf of its members falls short here because the Coalition's claims "require[] the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977). As explained, *see* Inj. Opp. 4-5, the Rule that plaintiffs challenge in this lawsuit explains the factors that ATF intends to consider when determining whether any particular braced pistol constitutes a "rifle" under the NFA. But to the extent that plaintiffs generally claim that the Rule does not fully reflect the statute or is vague, those claims cannot be resolved in the abstract. Instead, they require determining how the statute and the factors identified in the Rule apply with respect to a particular braced pistol. Thus, without the participation of the Coalition's individual members—who presumably own a wide array of different brace-and-pistol combinations—it will be impossible to determine which, if any, of the particular members would be entitled to relief based on their particular braced pistols. *Cf. Friends for Am. Free Enterprise Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575 (5th Cir. 2002) (holding that an organization plaintiff lacked associational standing because the court "would need individualized information . . . to determine the proper scope of an injunction").

Finally, extending the injunction to hundreds of thousands of individuals or

8

businesses would severely undermine public safety—a problem that may increase by the day, as the Coalition attempts to sell the benefit of this Court's injunction to prospective new members. *See, e.g.*, Firearms Policy Coalition, Twitter (May 23, 2023 8:45 PM), https://twitter.com/gunpolicy/status/166117141418604953 ("We cannot predict what the Court will do with our request for clarification. So the best we can say tonight is: Plan ahead. Become an FPC Official Member at JoinFPC.org TODAY so you don't have to wonder tomorrow."). Thus, at the absolute least, were the Court to grant the Coalition's request to include its alleged members, it should not extend the injunction beyond the Coalition's members as of the date that plaintiffs filed their motion for an injunction pending appeal. *Cf.* Mot. 2 (suggesting only that the Court clarify whether the injunction extends to the Coalition's "existing members").

          Respectfully submitted,

          ABBY C. WRIGHT
          SEAN R. JANDA

           /s/ Ben Lewis
          BENJAMIN R. LEWIS
          *Attorneys, Appellate Staff*
          *Civil Division, Room 7250*
          *U.S. Department of Justice*
          *950 Pennsylvania Avenue NW*
          *Washington, DC 20530*
          *(202) 514-2494*

May 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 1944 words, according to the count of Microsoft Word.

*/s/ Ben Lewis*
Benjamin R. Lewis
